

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 31, 2023

**VIA ECF AND EMAIL**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

Re:   United States v. Adamu Alhassan, 21 Cr. 523 (JMF)

Dear Judge Furman:

The Government respectfully submits this letter in advance of defendant Adamu Alhassan's February 7, 2023 sentencing on his conviction for conspiring to transport stolen cars in interstate and foreign commerce, in violation of 18 U.S.C. 371.

For years—from approximately September 2017 to July 2021—the defendant conspired with others to transport stolen cars to West Africa.  The scope, duration, and nature of the defendant's crimes render him deserving of an incarceratory sentence, though one below the Sentencing Guidelines range of 30 to 37 months' imprisonment.

## I.   RELEVANT BACKGROUND

### A.   Offense Conduct

The defendant's participation in the charged conspiracy is notable for the range of roles he played to facilitate the transportation of stolen cars. In or about December 2020, the defendant and an unindicted co-conspirator ("CC-1") called a confidential source (the "CS") numerous times to request (i) booking numbers for the purported purpose of exporting household goods and furniture to Ghana; and (ii) the transportation of the containers associated with those booking numbers to the Ports of New York and New Jersey. Presentence Investigation Report ("PSR") ¶ 43. The defendant identified himself as "Bukari" and referred to CC-1 as "Fiador." *Id.* Based on information from the CS, law enforcement searched the containers associated with the booking numbers requested by the defendant and CC-1 and recovered seven stolen vehicles. *Id.* ¶ 44.

The Honorable Jesse M. Furman                                                      Page 2
January 31, 2023

On calls recorded by the CS, the defendant was explicit about the fact he was moving stolen cars. In or about February 2021, the defendant stated on the phone that a "hot" Dodge Ram had been loaded into a particular container. *Id.* ¶ 49. Law enforcement's search of that container recovered a stolen Dodge Ram and an additional vehicle stolen from New York. *Id.*

The defendant was additionally surveilled helping to load cars into one of the containers for which he had requested a booking number. Law enforcement searched that container and recovered two stolen cars. *Id.* ¶¶ 45-46. In the course of the federal investigation, the defendant was arrested by police in Hillside, New Jersey, while loading a stolen car into yet another shipping container. *Id.* ¶ 50.[1]

The defendant did not work alone to ship stolen cars. He worked as part of a vast network of individuals, who stole, transported, and exported the cars. The evidence reflects these connections between the defendant and others. For instance, an unindicted co-conspirator had, on his phone, a video of stolen cars behind unloaded from a container in Ghana. *Id.* ¶ 42. That container was shipped by the defendant, who listed his last name but a different first name on the export form, and an address that was one digit off from his true address. *Id.*

The overall conspiracy encompasses 64 stolen cars. The cars were not only fraudulently purchased from car dealerships but also stolen from individual owners, sometimes from right in front of the victims' homes and often with personal effects inside. The defendant is charged with transporting 16 of these stolen or fraudulently purchased cars for planned export, for a total loss value of $1,059,635.

**B.       The Defendant's Arrest and Conviction**

On July 20, 2021, the defendant was arrested on a complaint charging him in connection with his role in the above-described scheme. On August 17, 2021, the defendant was charged in a two-count Indictment (ECF No. 19) with (i) conspiracy to transport stolen cars between in or about September 2017 up to and including in or about July 2021 (Count One); and (ii) transporting stolen cars in interstate commerce (Count Two). On August 29, 2022, the defendant pleaded guilty to Count One of the Indictment pursuant to a plea agreement.

On November 7, 2022, the defendant was arrested while on pretrial supervision for simple assault and criminal mischief/damage to property. The arrest arose out of a fight with another individual; that case is pending.

**C.       The Final PSR**

As set forth in the PSR, the Probation Office calculated an offense level of 19 and a Criminal History Category of I. PSR ¶ 128. Accordingly, the Probation Office calculates the applicable Guidelines range as 30 to 37 months' imprisonment. *Id.* The Probation Office

---

[1] Based on information from the Hillside Police Department and the Union County Prosecutors' Office, the Government has been able to confirm that the case is no longer pending but no further information is currently available as to the disposition.

recommends a sentence of 15 months' imprisonment, to be followed by three years of supervised release. *Id.* at 30.

## II.   DISCUSSION

### A.   Applicable Law

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the need to adequately deter criminal conduct and promote respect for the law, and the need to protect the public from further crimes of the defendant. *Id.* at 50 & n.6.

### B.   The Applicable Guidelines Range

As set forth in further detail below, the Probation Office is correct that the applicable Guidelines range is 30 to 37 months' imprisonment.

1.  The November 1, 2021 Guidelines Manual applies to this case.

2.  Pursuant to U.S.S.G. § 2B1.1(a)(2), the base offense level is six.

3.  Pursuant to U.S.S.G. § 2B1.1(b)(1)(H), because the loss of approximately $1,059,635 is more than $550,000 but less than $1,500,000, the offense level is increased by 14 levels.

4.  Pursuant to U.S.S.G. § 2B1.1(b)(15), the offense level is increased by 2 levels because the offense involved an organized scheme to steal or to receive stolen vehicles or vehicle parts.

5.  Pursuant to U.S.S.G. § 3E1.1(a) and (b), because the defendant has accepted responsibility and gave timely notice of his intention to enter a plea of guilty, the offense level is deducted by three levels.

In accordance with the above, the applicable Guidelines offense level is 19.

Based upon the calculations set forth above, and a criminal history category of I, the defendant's Guidelines range is 30 to 37 months' imprisonment.

### C.   Forfeiture and Restitution

Because the defendant is responsible for facilitating the transport of vehicles that were subsequently recovered by law enforcement, the Government will not seek an order of forfeiture at sentencing and does not at this time anticipate seeking restitution.

The Honorable Jesse M. Furman                                                                 Page 4
January 31, 2023

### D.      Analysis of the § 3553(a) Factors

The Government respectfully submits that an analysis of the § 3553(a) factors counsels in favor of a significant custodial sentence, though one that is below the Applicable Guidelines range. Contrary to the defendant's assertions, a sentence of probation is not appropriate in his case. To date, this Court has sentenced only one of the four defendants, Gerald Ato Barnes, and he was indeed given a sentence of probation, but the differences between Mr. Barnes and Mr. Alhassan are vast. Unlike Mr. Barnes, who was definitively linked to only three cars, and whose involvement in the conspiracy may have been limited to arranging for the fraudulent purchase of vehicles, Mr. Alhassan is directly linked to over a *million dollars'* worth of stolen vehicles.

*First*, a significant incarceratory sentence is necessary to reflect the nature, circumstances, and seriousness of the defendant's conduct; to promote respect for the law; and to provide just punishment. This was not an isolated crime by the defendant or in any way fleeting or short-lived. As described above, the defendant was a member of the conspiracy responsible for a variety of roles: he helped obtain booking numbers and load the cars, he supplied the fraudulent information for inclusion on customs forms, and he communicated with co-conspirators to both obtain the cars and ensure they reached their destination in Ghana. Relatedly, the defendant's criminal conduct involved repeated deception.

This was not a victimless crime. The cars stolen and transported as part of this conspiracy were taken from individuals' homes as well as from car dealerships. The cars that the defendant alone was involved in transporting were worth more than a $1 million. Even if the defendant did not personally steal any of the cars, as a transporter of stolen cars, he incentivized and facilitated the actual car thefts by creating a market for these stolen cars. The defendant fully intended, and attempted, to ship all 16 of these stolen cars to West Africa. Thus, this crime is serious, and a punishment commensurate with the intended losses to the victims of over $1 million is warranted.

*Second*, an incarceratory sentence is needed to afford adequate deterrence to the defendant and others. Much of the conspiracy took place in, and a number of the cars involved in this conspiracy were stolen from New Jersey, which is a particular hotbed of car theft and stolen car exports. As newspaper reports and recent legislative efforts make clear, New Jersey has seen an unprecedented wave of car thefts in recent years.[2] In 2021, part of the charged conspiracy period, a record-breaking 14,389 vehicles were reported stolen in New Jersey alone.[3] As to general deterrence, the nature of this scheme generally renders it difficult to uncover, since individuals engaged in transporting and exporting stolen cars often take affirmative steps to conceal their conduct—as the defendant and his co-conspirators did here. Furthermore, once the stolen cars have

---

[2] Trenton Bureau, NJ Wants To Crack Down On Car Thefts, But Critics Say Efforts Won't Do Much To Crime Wave, Jan. 3, 2023, *available at* https://www.northjersey.com/story/news/state/2023/01/03/nj-car-theft-bills-discriminate-dont-address-cause-critics-say/69756531007 (last visited Jan. 31, 2023).

[3] William Westhoven, In 'Target-Rich' NJ Suburbs, Police Battle Alarming Rise in Luxury Auto Theft, Aug. 4, 2022, available at https://www.northjersey.com/story/news/2022/08/04/nj-suburbs-see-alarming-rise-in-luxury-auto-theft/65389607007 (last visited Jan. 31, 2023).

The Honorable Jesse M. Furman                                                                        Page 5
January 31, 2023

been shipped overseas to foreign countries, the recovery of these cars and the identification of those responsible for shipping them become extremely difficult, if not impossible. General deterrence interests are also implicated by how profitable this crime is; an individual can—and in this scheme, did—get the keys to a virtually new luxury car by paying a rental car company a few hundred dollars.  Given this disparity between the value of these newer, high-end model cars and the relatively minimal cost to fraudulently obtain them, a significant sanction is needed to deter the potential participants in these schemes.

       As for specific deterrence, several considerations warrant an incarceratory sentence. First, as discussed, the defendant was involved in transporting numerous stolen cars, for an extended period of time. His federal arrest was not his first arrest for this conduct; before this case was charged, Hillside police caught the defendant red-handed while loading stolen cars. While the defendant points to the details of defendant's challenging personal history as mitigating circumstances, the defendant's request for a non-incarceratory sentence does not fit the offense. Such a sentence would fail to recognize the seriousness of the conduct at issue and would not send the appropriate message to the defendant, others similarly situated, the public, or the victims of the defendant's crime.

## III.  CONCLUSION

       For the reasons set forth above, the Government respectfully submits that a Guidelines sentence of incarceration is warranted in this case.

<div style="margin-left:40%;">

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
the Southern District of New York

By:     /s/
Jane Chong
Kevin Mead
Assistant United States Attorneys

</div>

Cc: Marco Laracca, Esq. (via CM/ECF)